IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARLAND
GREENBELT DIVISION

| | |
|---|---|
| PAKI A. MILLS <br> 39060 Tanglewood Court <br> Mechanicsville, Maryland  20659, <br> St. Mary's County <br><br> Plaintiff, <br><br> v. <br><br> COCA-COLA ENTERPRISES, INC. <br> 2500 Windy Ridge Parkway <br> Atlanta, Georgia  30339 <br>     SERVE REGISTERED AGENT: <br>     7 St. Paul Street <br>     Suite 1660 <br>     Baltimore, Maryland  21202, <br><br> Defendant. | Civil Action No. 8:11-cv-1725 <br><br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Paki A. Mills, for his Complaint against Coca-Cola Enterprises, Inc. alleges:

### INTRODUCTION

1.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981, and under the laws of the State of Maryland.

2.  Plaintiff Paki A. Mills alleges that Defendant Coca-Cola Enterprises, Inc. in the course of its operation of its facility at 400 East Charles Street, La Plata, Maryland, 20646 intentionally discriminated against him based upon his race and wrongfully discharged him.

## THE PARTIES

3. Plaintiff Paki A. Mills ("Mr. Mills" or "Plaintiff") is an adult resident of St. Mary's County, Maryland and resides at 39060 Tanglewood Court, Mechanicsville, Maryland 20659. At all relevant times, Mr. Mills was an employee of Defendant Coca-Cola Enterprises, Inc. ("Defendant") within the meaning of 42 U.S.C. § 2000e(f). He was hired by Defendant as a Warehouse Worker on or about April 9, 2001. Mr. Mills was eventually promoted to a position as a Side-Load Truck Driver (a "Driver") and continued working for Defendant until he was terminated on or about April 1, 2009.

4. Defendant is a corporation incorporated under the laws of Delaware, having a principal place of business at 2500 Windy Ridge Parkway, Atlanta, GA 30339. Defendant's resident agent for the State of Maryland is located at 7 St. Paul Street, Suite 1660, Baltimore, Maryland 21202. Defendant is licensed to do business in Maryland and has a main office at 400 East Charles Street, La Plata, Maryland 20646 (the "Facility").

5. At all relevant times, Defendant employed in excess of 15 employees and was an employer within the meaning of 42 U.S.C. § 2000e(b).

6. Defendant has had more than five hundred (500) employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

7. This is, in part, an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. §1981; 42 U.S.C. § 1981a; 42 U.S.C. § 1988, and the common law and statutes of the State of Maryland.

8. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law.

9. This Court has supplemental jurisdiction over Plaintiff's causes of action arising under the common law and statutes of the State of Maryland, and which arise from a common nucleus of operative facts, pursuant 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Defendant because it is doing and has done substantial and sufficient business in this District and has committed the acts, actions, and omissions complained of herein within this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), wherein Plaintiff resides, Defendant regularly conducts business and Defendant's unlawful conduct occurred.

12. Divisional venue is in the Greenbelt Division pursuant to Local District Court Rule 501 because Plaintiff resides in St. Mary's County and Defendant's principal place of business in Maryland is located in Charles County at 400 East Charles Street, La Plata, Maryland 20646; St. Mary's County and Charles County are both located in the Greenbelt Division per 28 U.S.C. § 100(2).

## BACKGROUND

13. Mr. Mills, an African-American male, was hired by Defendant as a warehouse loader on or about April 9, 2001. Mr. Mills was then assigned as a merchandiser, and was eventually promoted to his position as a Driver and continued his employment with the Defendant until he was terminated on or about April 1, 2009. As a Driver, Mr. Mills's duties included driving trucks that required the driver to have a Commercial Driver's License ("CDL"). Mr. Mills performed his duties adequately and met or exceeded Defendant's expectation throughout his employment.

14. On March 25, 2009, Mr. Mills was informed by his immediate supervisor, Ronnie Hancock, that the Maryland Motor Vehicle Administration ("MVA") had suspended his CDL in January, 2009. Mr. Hancock then told Mr. Mills that he could not continue working until the CDL suspension was remedied.

15. Prior to March 25, 2009, Mr. Mills had not received any form of notice that his CDL had been suspended. The MVA did not have Mr. Mills's correct mailing address and any and all notices of a traffic citation or subsequent suspension that were sent to the incorrect mailing address were returned to the MVA by the United States Postal Service. Consequently, Mr. Mills never received notice of the traffic citation or subsequent suspension from the MVA.

16. After learning of his CDL suspension on March 25, 2009, Mr. Mills promptly reported to the MVA, learned that the suspension was due to a twenty-five dollar ($25.00) fine for a seatbelt violation (a non-moving violation). Mr. Mills paid the fine, corrected the problem, and then immediately returned to the Facility with documentation from the MVA showing that the suspension had been lifted and presented this documentation to his supervisor, Mr. Hancock. All of these events occurred during the same day, March 25, 2009. Any previous failure by Mr. Mills to inform Defendant of the traffic citation or CDL suspension was unintentional and directly resulted from the Mr. Mills's lack of notice regarding the citation and suspension.

17. Despite Mr. Mills's immediate and successful attempts to remedy his CDL suspension, Defendant suspended and ultimately terminated Mr. Mills from his employment. Mr. Mills was terminated via Defendant's agent, Robin Nelson, the Sales Center Manager at the Facility.

## COUNT I

*Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.*, **and 42 U.S.C. § 1981a.**

18. Plaintiff incorporates paragraphs 1 through 17 by reference as if fully set forth herein.

19. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et seq.*, and 42 U.S.C. § 1981a, for relief based upon the unlawful employment practices of the Defendant. Specifically, Plaintiff complains of Defendant's intentional violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

20. Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission, which issued a Notice of Suit Rights. The Notice of Suit Rights was mailed on March 31, 2011 and was received April 2, 2011. The Notice of Suit Rights authorized the filing of suit within ninety (90) days of receipt of said Notice.

21. Plaintiff is an African-American and, during his employment with Defendant, Plaintiff was a member of the class protected under Title VII against race based discrimination by his employer, Defendant, or by Defendant's agents.

22. During the course of his employment with Defendant, Mr. Mills never received any sort of write-up or warning from Defendant about his driving practices or CDL status prior to March 25, 2009.

23. Mr. Mills was terminated one week after the suspension on his CDL was lifted.

24. Other similarly situated employees were not suspended or terminated under similar or more drastic circumstances:

A.  Bernard Nauman, a Caucasian Driver for Defendant, was issued a DUI traffic citation while employed by Defendant. Mr. Nauman failed to notify Defendant of this traffic violation and knowingly withheld this information from Defendant until after he went to court several weeks later. During that several week period, Mr. Nauman continued driving Defendant-owned trucks on a suspended CDL. When Defendant discovered that Mr. Nauman had withheld information regarding the DUI and that he had been driving on a suspended license Defendant did not reprimand, suspend or terminate Mr. Nauman. Mr. Nauman was merely transferred to a warehouse position where he remained employed by Defendant. Mr. Nauman's traffic violation was a DUI; a more severe violation than Mr. Mills's seatbelt violation. Mr. Nauman knowingly withheld information regarding his traffic violation whereas Mr. Mills did not even know he had received a traffic citation. Furthermore, Mr. Nauman intentionally drove Defendant-owned trucks with a suspended CDL whereas Mr. Mills never drove a truck once he was made aware of his CDL suspension. Nevertheless, Mr. Nauman was neither suspended nor terminated, yet Mr. Mills was both suspended and terminated;

B.  Various Caucasian employees of Defendant who worked at the Facility as warehouse loaders were instructed by Defendant's agents to drive the trucks they were loading out of the Facility onto a public road, Route 6, and around to the other side of the Facility. These workers did not have the CDLs legally required to drive the trucks on a public road. None of these employees were reprimanded, suspended or terminated by Defendant for these violations of traffic laws. In fact, the Defendant condoned, instructed and even mandated the warehouse loaders to commit these violations of traffic laws. These warehouse loaders knowingly drove without a CDL in violation of applicable traffic laws whereas Mr. Mills did not know his CDL was suspended at any point when he was driving Defendant-owned trucks. Mr. Mills was terminated even though he did not know he was driving trucks

while his CDL was suspended, whereas the warehouse loaders were not terminated or punished in any way after they knowingly drove trucks without the required CDL under the instruction of Defendant;

    C.  On or about May 25, 2009, several Caucasian Drivers employed by Defendant knowingly drove Defendant-owned trucks in violation of regulations imposed by the Department of Transportation ("DOT"). DOT regulations prohibit a licensee from using his/her CDL to drive more than sixty (60) hours in a seven (7) day work week. These Drivers exceeded this limit by and when they were driving off the clock. Defendant logged the Drivers' excess hours as hours worked in the warehouse rather than hours spent driving in order to avoid detection of the violation. These Drivers intentionally violated traffic rules and regulations. Mr. Mills never knowingly violated any traffic rules or regulations. Defendant encouraged and even mandated these Drivers to commit such violations, however Defendant terminated Mr. Mills when it discovered Mr. Mills' violation;

    D.  Cameron (last name unknown to Plaintiff), a Caucasian employee of Defendant, drove a truck owned by the Defendant without a CDL during the course of his employment. Defendant knew Cameron did not have a CDL, yet Defendant permitted and instructed Cameron to drive off the Facility's premises. Cameron drove the truck into a fence while illegally operating the truck. Cameron was not reprimanded, suspended or terminated as a result of his actions. Cameron knowingly drove without a CDL in violation of applicable traffic laws whereas Mr. Mills did not know his CDL was suspended at any point when he was driving Defendant-owned trucks. Mr. Mills was terminated even though he did not know he was driving while his CDL was suspended, whereas the Cameron was not terminated or punished in any way after he knowingly drove without the required CDL under the instruction of Defendant;

7

   E. Ed Emery, a Caucasian Driver for Defendant, recklessly drove a Defendant-owned truck into a median during the course of his employment.  Mr. Emery swerved into the median after a failed attempt to stop behind a parked school bus that was unloading children.  Defendant did not reprimand, suspend or terminate Mr. Emery after discovering the events and circumstances of Mr. Emery's traffic incident; and

   F. Jeff Quade, a Caucasian Driver for Defendant, recklessly drove a Defendant-owned truck off the road during the course of his employment.  The truck was totaled; however, the Defendant did not reprimand, suspend or terminate Mr. Quade after discovering the events and circumstances of his traffic incident;

25. Mr. Mills, as an African-American employee of Defendant, was therefore treated in a disparate manner and was subjected to Defendant's unfair policies and/or practices insofar as he was treated in an unequal manner and unlike other similarly situated employees of different races.

26. Defendant otherwise discriminated against Mr. Mills based upon Mr. Mills's race.

27. At all relevant times, Defendant knew that the discriminatory conduct complained of herein was without cause as Mr. Mills had consistently satisfied and/or exceeded all the requirements of his position.

28. The reasons given by Defendant for Mr. Mills's termination were mere pretext for the unlawful discrimination against Mr. Mills:

   A. Other similarly situated employees of Defendant were not terminated for failing to report a traffic violation and/or unknowingly driving a Defendant-owned truck with a suspended CDL;

    B. Mr. Mills was not an aggressive driver.  He never operated Defendant-owned trucks in an unsafe manner and never received coaching from Defendant with regard to safe driving and/or compliance with state and federal traffic laws;

    C. Mr. Mills's CDL was never suspended except for the suspension for the aforementioned late payment of a seatbelt violation;

    D. Mr. Mills was not charged with any traffic citation other than the aforementioned seatbelt citation during the course of his employment with Defendant;

    E. Mr. Mills never had any incidents of inappropriate conduct, verbal abuse, or insubordination in the workplace while employed by Defendant; and

    F. Mr. Mills was not chronically late and/or absent during 2001.

  29. As a result of Defendant's employment policies, procedures and practices, Mr. Mills was unjustly and discriminatorily deprived of equal employment opportunities because of his race as an African-American.

  30. As a further result of Defendant's above stated discriminatory acts, actions, and omissions, Mr. Mills has been, is being, and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to him as an employee, but denied because of his race in an amount to be proven at trial.

  31. Defendant's actions were the direct and proximate cause of the injuries, damages, and harm suffered by Mr. Mills.

  32. Furthermore, Defendant intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against Mr. Mills, contrary to Mr. Mills's federally protected rights as guaranteed to him under Title VII and 42 U.S.C. § 1981a.

33. The intentional and discriminatory conduct of Defendant complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

34. Because Defendant engaged in discriminatory employment practices with malice and/or reckless indifference toward Mr. Mills's federally protected rights, Mr. Mills is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies to which he may be legally entitled under Title VII and 42 U.S.C. § 1981a.

## COUNT II

### *Discrimination in Violation of 42 U.S.C. § 1981*

35. Plaintiff incorporates paragraphs 1 through 34 by reference as if fully set forth herein.

36. Prior to the discriminatory acts, actions, intentions and omissions alleged herein, Mr. Mills entered into a contract of employment with Defendant.

37. The discriminatory acts, actions, intentions and omissions alleged herein have prevent Mr. Mills from enjoying all the benefits, privileges, terms, and conditions of the contractual relationship, solely because of his race, in violation of 42 U.S.C. § 1981 (Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991).

38. As a result of the discriminatory acts, actions, intentions and omissions set forth herein, Mr. Mills was humiliated, insulted, embarrassed, and ultimately terminated from his employment. As a further result, Mr. Mills sustained severe mental anguish and emotional distress.

## COUNT III

### *Discrimination in Violation of Maryland Law*

39. Plaintiff incorporates paragraphs 1 through 38 by reference as if fully set forth herein.

40. All of the discriminatory acts, actions, intentions and omissions alleged herein occurred in the State of Maryland.

41. All of the discriminatory acts, actions, intentions and omissions alleged herein also violate Md. Code Ann., St. Gov't §20-601, et. seq., including but not limited to §20-606 (2009).

42. As a result of the discriminatory acts, actions, intentions and omissions set forth herein, Mr. Mills was humiliated, insulted, embarrassed, and ultimately terminated from his employment. As a further result, Mr. Mills sustained severe mental anguish and emotional distress.

## REQUEST FOR RELIEF

43. The conduct of the Defendant, as set forth herein, violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981a; the Civil Rights Act of 1866, amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981; and the statutes and common law of Maryland, causing Plaintiff to suffer injuries, damages, and harm, including, but not limited to, past and future economic loss, and past and future non-economic loss. As a result of these violations, the Plaintiff was humiliated, insulted, embarrassed, and ultimately terminated from his employment. As a further result, Plaintiff sustained severe mental anguish and emotional distress.

WHEREFORE, the Plaintiff respectfully requests this Court:

    A. Enter judgment in favor of Plaintiff and against Defendant;

B.     Award Plaintiff compensatory damages against Defendant in the amount of TEN MILLION DOLLARS ($10,000,000.00);

C.     Award Plaintiff punitive damages against Defendant in the amount of TWENTY MILLION DOLLARS ($20,000,000.00);

D.     Award Plaintiff's counsel reasonable attorneys' fees and costs; and

E.     Grant to Plaintiff such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

 /s/ Kenneth J. Coughlan
Kenneth J. Coughlan, Esq.
Bar No. 28728
10 East Baltimore Street
Suite 901
Baltimore, Maryland 21202
Kenneth.Coughlan@AnneHokeLaw.com
Telephone:  (410) 234-1410
Facsimile:  (410) 234-1413
*Attorney for Plaintiff*